UNITED STATES of America,
Appellee,

v.

Andres HALL, Appellant.

No. 1052, Docket 71-1232.

United States Court of Appeals,
Second Circuit.

Argued July 16, 1971.

Decided Aug. 19, 1971.

Henry Putzel, III, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., and Peter F. Rient, Asst. U. S. Atty., S.D.N.Y., on the brief), for appellee.

Melvyn L. Cantor, New York City, (Stephen L. Kass, Community Law Offices, Charles E. Koob and Simpson, Thacher & Bartlett, New York City, on the brief), for appellant.

Before FRIENDLY, Chief Judge, and LUMBARD and OAKES, Circuit Judges.

LUMBARD, Circuit Judge:

Andres Hall appeals from a judgment of conviction for assault, entered on February 25, 1971 in the Southern District of New York, after a jury trial before Judge Levet. Count I of the indictment

charged Hall with assault with a dangerous weapon, and Count II charged him with simple assault, both committed within the special maritime jurisdiction of the United States, in violation of 18 U.S.C. §§ 7, 113(c) and (d), and 3238. The jury found Hall not guilty on Count I and guilty on Count II, and he was sentenced to a two-month term of imprisonment. He is presently released on bail pending appeal. We find no error in the proceedings below, and accordingly we affirm the conviction.

At trial, the government offered evidence demonstrating the following facts: Hall was employed as senior electrician aboard the S.S. Hope, a ship which is chartered by the United States government to the People-to-People Health Foundation, and which sails around the world as a floating hospital and medical training center. Early in the afternoon of February 7, 1970, on the mess deck of the S.S. Hope, then docked at La Goulette, Tunisia, Hall and John Steele, the ship's chief electrician and Hall's superior, began to argue about Hall's work record. Hall twice tapped Steele in the chest, and Steele responded by pushing Hall backwards. Hall then approached Steele with a knife and began jabbing at him. One of Hall's thrusts found its mark in the right side of Steele's chest and another in Steele's left buttock. At this point, the fight was broken up. Steele was hospitalized, but needed no stitches.

Hall took the stand in his own behalf and testified that once before he and Steele had had a fight, in which Steele punched him in the mouth. As to the events of February 7, 1970, he corroborated the government's evidence concerning the cause of the fight, but denied stabbing Steele in the chest and stated that he had struck Steele in the buttocks with a hacksaw blade only after Steele kicked him, struck him, and threw tools at him, and in the belief that Steele was about to pull a gun on him.

Hall's main argument—and the only one we need discuss—is that he was denied his Sixth Amendment rights to counsel of his own choosing and to the effective assistance of counsel. The facts relating to this claim are as follows: The indictment against Hall was filed on August 10, 1970. On August 17, he appeared in court for his arraignment and pleaded not guilty. At this time he was represented by Mrs. F. L. Wertheimer, who was then representing him in a Coast Guard proceeding arising out of the same incident, but who, pursuant to an understanding between them, was representing him in the district court solely for purposes of the arraignment.

On October 13, the return date for all motions, Hall appeared in court without counsel and stated to Judge Wyatt that he was unrepresented and that he had been unable to engage other counsel. When he declined the court's offer to appoint counsel, Judge Wyatt allowed him one additional week to return with an attorney. The October 20 court appearance was handled by Theodore Krieger, Esq., but afterwards it was determined that Hall could not afford Mr. Krieger's fee. Hall then contacted Harold Rothwax, Esq., who agreed to represent Hall so long as the trial did not commence prior to February 1971.

On December 7, 1970, the government learned that the S.S. Hope was scheduled to leave New York on January 7, 1971, carrying the government's chief witnesses on a year-long voyage. Accordingly, the government sent a letter to the district court on December 15 requesting an expeditious trial. The case was assigned to Judge Levet. Although the government did not send a copy of its letter to Hall, the Assistant United States Attorney in charge did try to call Hall several times between December 7 and December 16 to inform him that the government was seeking a trial in the first week of January. Hall, however, never received any of these calls. The Assistant finally contacted Mr. Rothwax on either December 18 or December 21 and explained the situation to him. Mr. Rothwax told the Assistant that he could not try the case in January.

At a pre-trial conference on December 23, Hall appeared with Mr. Rothwax,

who stated to the court that he had agreed to handle the case only if it did not come to trial before February 1971, and that he would be unable to try the case in January, because of prior commitments and because he felt that the additional time was necessary for him to review the transcript of the Coast Guard proceedings and to locate certain potential defense witnesses. However, because of the government's request that the case be tried before the S.S. Hope left on its next year-long voyage, Judge Levet set January 4, 1971 as the date for trial and directed Hall to return on December 28· with an attorney who could represent him at that trial.

On December 28, Hall appeared and presented the court with a letter from the Community Law Offices, Inc., stating that they would represent Hall if the case could be adjourned for one month. Judge Levet refused to adjourn the trial date and asked Abraham Solomon, Esq. to represent Hall. Hall, however, refused to sign the appointment form for Mr. Solomon and stated that he refused to accept any lawyer appointed by the court. Hence, Judge Levet directed Hall to appear with counsel for trial on January 4 or to be prepared to represent himself—an alternative which the judge strongly warned Hall not to follow. Later that day, Judge Levet designated David Blackstone, Esq. to assist Hall in his own defense and Hall met with Mr. Blackstone in his office on the following day.

At the commencement of trial, Hall again refused the court's offer to appoint counsel. The court then directed him to represent himself and asked Mr. Blackstone to sit with him and advise him. Hall made his own opening statement and, with Mr. Blackstone's assistance, made numerous objections to the testimony of the first two government witnesses. He also conducted part of the cross-examination of Steele, the first government witness; but at Hall's own request, Mr. Blackstone concluded the cross-examination of Steele and conducted the entire cross-examination of the second government witness. For the remainder of the trial, Mr. Blackstone

alone acted as the defense attorney, with Hall's explicit approval.

■ Hall argues that the district court's refusal to adjourn the trial until he could be represented by Mr. Rothwax or the Community Law Offices denied him the right to be represented by counsel of his own choice, a right guaranteed by the Sixth Amendment. Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932). We do not agree. The determination whether to allow a defendant a continuance to secure counsel of his own choosing is a matter within the traditional discretion of the trial court; and in making that determination, the court should apply a test of reasonableness. Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). As the Supreme Court stated in *Ungar*, the answer to the question whether the denial of a continuance is an abuse of discretion so as to violate the Constitution "must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." 376 U.S. at 389, 84 S.Ct. at 850. It is abundantly clear to us that Judge Levet did not abuse his discretion here in refusing to grant a continuance beyond January 4.

The government pointed out in its request for an expeditious trial that the S.S. Hope was scheduled to sail on January 7 for a year-long voyage, carrying with it the government's two key witnesses—Steele and Robert Drechsler, the ship's chief engineer and an eyewitness to the incident in question. Although at trial it was determined that Drechsler no longer worked on the S.S. Hope but was working in Brooklyn and thus would have been available as a government witness after January 7, these facts were not known to Judge Levet, if he had granted the adjournment requested, this simple assault case would have had to have been postponed until some time in 1972, a situation hardly conducive to the orderly and speedy administration of justice in the courts. See United States v. Bentvena, 319 F.2d 916, 936 (2 Cir.), cert. denied sub nom. Or-

 

mento v. United States, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963).

In light of this, Hall was given a reasonable opportunity before the scheduled trial date to obtain counsel of his own choosing. Mr. Rothwax knew at least by December 21 that the government was seeking trial in the first week in January, and Hall knew on December 23 that Mr. Rothwax would be unable to represent him at that trial. Hall's subsequent request to the Community Law Offices was met with a response that they would represent him only if the case could be adjourned for a month, and he informed the court of this fact on December 28. Yet knowing all this Hall still did not retain counsel to represent him on the scheduled date, and we have held that a defendant waives his right to have counsel of his own choice by failing to retain an attorney within a reasonable time. United States v. Arlen, 252 F.2d 491, 494–495 (2 Cir. 1958). Moreover, Hall refused to accept the services of a court-appointed counsel. Thus, Hall's failure to retain counsel to represent him in a January trial and his refusal to accept a court-appointed attorney to do so, coupled with the apparent great desirability and importance of trying the case before the ship sailed, left Judge Levet with no reasonable alternative but to appoint Mr. Blackstone to assist Hall on the scheduled date, with or without his consent—a procedure which we recommended in United States v. Spencer, 439 F.2d 1047, 1051–1052 (2 Cir. 1971). In view of all this, the court's action cannot be said to have been an abuse of discretion so as to deny Hall his Sixth Amendment right to counsel of his own choice.

█ Hall also argues that Judge Levet's action denied him his Sixth Amendment right to effective assistance of counsel in that Mr. Blackstone did not have time to prepare his defense adequately. Specifically, Hall contends that Mr. Blackstone did not have time to prepare Hall's testimony in his own defense, to prepare a requested jury charge on provocation, to review the record of the Coast Guard proceedings, or to locate and interview any potential defense witnesses.

We reject this contention. Hall fails to suggest what Mr. Blackstone might have done, but did not do, to prepare his testimony; a requested jury instruction on provocation would have been of minimal value, if not improper, inasmuch as Hall's defense was self-defense; and there is nothing to suggest that any witnesses who testified at the Coast Guard hearing would have been available to testify at trial. In fact, although Hall speculates that a better-prepared attorney could have represented him more effectively, the record reflects a spirited and, indeed, highly successful defense. In the face of uncontradicted testimony, including that of Hall himself, that Hall wounded Steele with a blade—whether knife or hacksaw—the jury acquitted him on the felony charge of assault with a dangerous weapon, convicting him only of simple assault, a misdemeanor.

Hall's contentions regarding certain alleged errors committed during the trial itself are insubstantial and wholly without merit.

Affirmed.