UNITED STATES of America,
Appellee,

v.

Thomas Joseph CARROLL et
al., Appellants.

Nos. 1209 to 1211, Docket 74–1138,
74–1139 and 74–1197.

Argued July 18, 1974.

Decided Jan. 6, 1975.

Count 1 charged appellants and others with unlawfully conspiring to rob a United States mail truck and to jeopardize the lives of the postal employees in possession of the truck and its contents, in violation of 18 U.S.C. § 371. Count 2 charged the murder of the guard, in violation of 18 U.S.C. §§ 1111 and 1114. Count 3 charged the assault on and wounding of the driver, in violation of 18 U.S.C. § 2114. After a twelve-day trial appellants were found guilty on all three counts. Mandatory prison sentences of life and twenty-five years were imposed on Counts 2 and 3, respectively, and appellants were sentenced to five years imprisonment on Count 1. All sentences are to run concurrently.

The government's case against appellants was overwhelming, and included testimony from participants in the robbery who had pled guilty to charges arising from their involvement. The defense offered no evidence. Of the many grounds of error urged in appellants' joint brief and at argument, only a few require discussion.

■ Appellants complain about the jury charge in two respects. The first objection is to the instruction that the jury might find a defendant guilty of murder and assault whether or not he had actually wielded a weapon. The jury was told that to do so it must first find a defendant guilty of the conspiracy charge, and then find beyond a reasonable doubt that the substantive offenses of murder and assault had been committed in furtherance of the conspiracy by a member of the conspiracy, and that the substantive offenses were reasonably foreseeable.

The charge as given is indistinguishable from that upheld by the United States Supreme Court in Pinkerton v. United States, 328 U.S. 640, 645 n. 6, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). *Pinkerton* "held that a conspirator was liable for the reasonably foreseeable crimes committed by a co-conspirator in fur-

John F. Martin, New York City (Michael P. Direnzo, New York City, and Louis F. Mascaro, Huntington, N. Y., on the brief), for appellants.

John J. Kenney, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. for the Southern District of New York, Kenneth R. Feinberg and S. Andrew Schaffer, Asst. U. S. Attys., on the brief), for appellee.

Before MULLIGAN and WINTER,* Circuit Judges, and NEWMAN,** District Judge.

NEWMAN, District Judge:

Thomas J. Carroll, Vincent McCloskey, and William McCloskey appeal from judgments of conviction on charges stemming from the attempted robbery of a United States mail truck. During the robbery a postal service guard aboard the truck was shot and killed, and the driver wounded. Appellants were tried before Honorable Charles M. Metzner and a jury, on a three-count indictment.

---

* Of the United States Court of Appeals, Fourth Circuit, sitting by designation.

** Of the United States District Court, District of Connecticut, sitting by designation.

therance of and during the venture." United States v. Alsondo, 486 F.2d 1339, 1346 n. 3 (2d Cir. 1973) (on petition for rehearing). Appellants incorrectly contend that a *Pinkerton* charge is warranted only if the substantive count includes a reference to the conspiracy statute, 18 U.S.C. § 371. United States v. Owen, 492 F.2d 1100 (5th Cir. 1974); United States v. Alsondo, *supra.*

■ Secondly, appellants challenge the refusal of the trial judge to submit to the jury lesser included offenses on the substantive counts. There is no error. A defendant is entitled to such a charge only if the evidence warrants it, United States v. Marcey, 142 U.S.App.D.C. 253, 440 F.2d 281, 285 n. 20 (1971). See Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); Fuller v. United States, 132 U.S.App.D.C. 264, 407 F.2d 1199, 1221 et seq. (1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969). On the present facts such a charge was not only unnecessary, but would have been improper. *Cf.* United States v. Harary, 457 F.2d 471 (2d Cir. 1972).

The government offered evidence to show that the murder was committed during an attempted felony and that the assault was committed with a dangerous weapon. See 18 U.S.C. §§ 1111, 2114. Section 1111 permits a finding of first degree murder if a person is killed during the course of an attempted felony such as robbery, and the jury was properly instructed that it could make such a finding. Since the evidence provided no basis for a conviction for a killing that did not occur in the course of an attempted felony, submitting lesser included offenses to the jury would have been improper on Count 2. Similarly, since the evidence provided no basis for a conviction for assault without a dangerous weapon, submitting a lesser included of-

fense to the jury would have been improper on Count 3.

■ Appellants next complain that they were unfairly surprised by evidence of prior criminal activity, introduced to show steps taken in planning the robbery. This evidence concerned a holdup carried out to determine if the participants were qualified to handle the mail truck robbery, and two car thefts. The evidence was properly admitted to prove the conspiracy and to prove the planning of the substantive offenses. See United States v. Deaton, 381 F.2d 114 (2d Cir. 1967).

■ Appellants contend the trial court erred in denying their request for a bill of particulars detailing all overt acts in furtherance of the conspiracy. There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge, United States v. Iannelli, 53 F.R.D. 482 (S.D.N.Y.1971). See United States v. Anderson, 368 F.Supp. 1253, 1263 (S.D.Md.1973). Hence the broad request made by appellants was properly denied.

■ In this case, nondisclosure of prior criminal conduct provides no basis for disturbing the convictions. No specific request was made to elicit such information, nor was a continuance sought to meet such evidence when it was introduced. Moreover, evidence of the prior episodes added only slight additional weight to the overwhelming evidence of appellants' participation in the mail truck robbery.

■ Vincent McCloskey claims the District Court abused its discretion when it denied a continuance requested on the eve of trial by John F. Martin, Esq., who had recently been retained by McCloskey.[1]

---

1. Appellants explicitly reject the government's characterization of the claim as one of inadequate assistance of counsel. Instead they argue only that the brief time available to Martin for preparation was inherently prejudicial.

The superseding indictment on which appellants were tried was filed on June 19, 1973. After a number of extended delays, December 10, 1973, was finally established as a firm trial date that was acceptable to all the parties. On December 3, while McCloskey was being represented by a court-appointed attorney—the third lawyer to appear for him in the case—Martin presented himself to the Court for the first time and indicated that McCloskey's family had expressed an interest in retaining him. The Court's response made clear that the substitution would be allowed, but only if it would not prevent the trial from going forward on December 10. As Judge Metzner stated:

> That [substituting Martin] is perfectly all right with me, but there is one thing you must understand. The case is going to trial next Monday. . . .
> I will not allow last minute substitutions of attorneys to prevent the trial of this case. . . . But the one thing I want to say is, this trial will not be adjourned. And unless you are ready to go to trial next Monday then I can't allow the representation.

Martin listened to these and similar statements of the Court, and initially refused to commit himself. Later that same day, however, he went to Judge Metzner's chambers and said that he would proceed with the case. It was entirely proper for Judge Metzner to conclude that Martin's representation would be on the terms the Court had so plainly expressed.

■ At 2:30 p.m. on December 7, Martin moved, *inter alia*, for a continuance, and the Court heard argument on Saturday, December 8. Martin contended that, having been retained only six days before trial, he was unable adequately to prepare McCloskey's defense. The denial of this motion is challenged by McCloskey.

A decision to grant or deny a continuance is a matter within the sound discretion of the trial judge; the sole requirement imposed is that the decision be reasonable. *E. g.,* United States v. Rosenthal, 470 F.2d 837 (2d Cir. 1972), cert. denied, 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975 (1973); United States v. Hall, 448 F.2d 114, 116 (2d Cir. 1971), cert. denied, 405 U.S. 935, 92 S.Ct. 971, 30 L.Ed.2d 810 (1972). See Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). In view of the circumstances that preceded Martin's appearance and the explicit condition under which he was permitted to appear, we find Judge Metzner's decision entirely reasonable.

First, we have frequently cautioned district judges to "be vigilant that requests for appointment of a new attorney on the eve of trial [do not] become a vehicle for achieving delay," United States v. Llanes, 374 F.2d 712, 717 (2d Cir. 1967). On the facts as they appeared to the Court on December 3, it would have been quite reasonable for Judge Metzner to conclude that this last minute request for change of counsel was in substantial part an attempt by McCloskey to delay his trial.[2] Compare Lofton v. Procunier, 487 F.2d 434 (9th Cir. 1973). Moreover, McCloskey had been afforded a reasonable, even generous, amount of time to obtain counsel of his choice before the trial date. He had known at least since November 20 that Jay Goldberg, Esq., who was then representing him, would be unable to try the case in December and that he would need a new attorney.[3] *Cf.* United States v. Hall, *supra.*

---

**2.** It would not have been the first time that McCloskey had intentionally and improperly caused a postponement of his trial. Earlier in the proceedings he had been sent to the Bureau of Prisons medical facility at Springfield, Missouri, for a psychiatric evaluation of symptoms of apparent mental illness. While at Springfield, McCloskey admitted that the symptoms had been feigned.

**3.** Appellants also argue that the Court improperly forced Goldberg to withdraw from the case; that contention is not supported by the record. Goldberg himself had been responsible for substantial delays in the trial.

Secondly, the Court's own calendar made it essential that the case be tried before January, 1974. Judge Metzner was scheduled to hear several complicated, multi-defendant trials shortly after the new year, and the Court was legitimately concerned with avoiding rescheduling those matters.

The Court was also concerned that if the trial started later than December 10 it would encroach on the Chanukah and Christmas holidays, making jury duty unnecessarily burdensome. The Court also wanted to avoid further delay because several defendants had been incarcerated since June. Judge Metzner expressed the belief that six months of pre-trial confinement was more than should be tolerated.

Finally, McCloskey fails to specify any prejudice arising from the brief interval between Martin's late entry and the start of the trial. No claim is made that McCloskey was inadequately represented; nor is there any suggestion of what Martin might have done during the trial had he been given more time to prepare. At no point during the trial did Martin request a continuance for time to meet an unexpected development. Goldberg, who had represented McCloskey longer than his other three attorneys, had informed the Court that he would call no witnesses and that the defendant would not testify. None of the defendants presented any evidence. Martin conducted a spirited defense and engaged in extensive cross-examination of the government's witnesses, in a case in which the evidence of guilt was overwhelming. In the absence of even a colorable claim of prejudice, the denial of a continuance was not an abuse of discretion.

■ Thomas Carroll and Vincent McCloskey contend they were denied their Sixth Amendment right to counsel. At the time Carroll was to be sentenced, his attorney was in the hospital; because the sentences on Counts 2 and 3 were mandatory terms of life and twenty-five years, respectively, the Court chose to impose sentence despite counsel's absence, rather than defer sentencing until counsel was available.[4]

Postponing Carroll's sentencing would have been preferable, but there is no need to remand for re-sentencing. The

For his convenience the trial date was postponed from September 11 to September 17. When Goldberg requested that McCloskey be examined more carefully, he did not inform the Court that he would be unavailable from October through December, although Judge Metzner concluded that Goldberg had known of this at least by September 17, and possibly as early as August 31. He did not inform the Court of this problem until November 7, two weeks after the Court had informed counsel that the trial would start on November 26. At his request the starting date was pushed further back, until December 10, on the clear understanding that no further adjournments would be granted, and subject to Goldberg's securing the consent of all other counsel. The Court informed Goldberg that McCloskey would need other counsel if he were unable to proceed as scheduled.

By November 13 Goldberg had not informed the Court whether the other attorneys had agreed to the delay, and Judge Metzner sent for him. Goldberg conceded that he would be unavailable on December 10, and Judge Metzner told him that McCloskey would definitely require new counsel. By November 20 neither McCloskey nor Goldberg had taken steps to secure new representation; Judge Metzner again sent for Goldberg and in the presence of McCloskey told him that McCloskey "must get another lawyer and get him immediately." By November 27 nothing had been done to comply with the Court's instructions, and on representations that McCloskey was indigent, the Court appointed attorney Edward Panzer, who accepted the obligation to start the trial on December 10.

In a letter to this Court after oral argument, Goldberg has submitted additional information regarding his availability to represent McCloskey. While this information provides a basis for understanding the circumstances that confronted Goldberg, the information is not alleged to have been communicated to Judge Metzner; hence the conclusion that the Judge acted well within his discretion remains undisturbed.

4. The absent attorney had submitted a letter to the Court in which he joined in all motions made by one of the other defense counsel, and Carroll himself made a motion for acquittal *pro se*.

presence of an attorney could have made no difference in the sentence imposed, *cf.* McClain v. Swenson, 435 F.2d 327, 332 (8th Cir. 1970), and there is no claim that Carroll was in any way prejudiced by the absence of his attorney. Compare Oliver v. Cowan, 487 F.2d 895 (6th Cir. 1973), cert. denied, 416 U.S. 975, 94 S.Ct. 2003, 40 L.Ed.2d 564 (1974). See Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

 Vincent McCloskey's claim derives from the fact that Donald Hopper, Esq., who initially represented Vincent until replaced by Attorney Goldberg, then represented Vincent's brother and co-defendant William McCloskey. There was no adversity between the brothers, and no impropriety whatever in Hopper's representation of Vincent McCloskey.[5]

We have considered appellants' other contentions and find them wholly without merit.[6]

Affirmed.

---

**5.** One spurious claim is made in an effort to allege prejudice. In the course of his second representation, Hopper attempted during cross-examination to refresh the recollection of witness Terrence Myers, the member of the conspiracy who had actually shot the guard and driver, by reading a portion of a statement given to postal inspectors by Paul Crawford, another member of the conspiracy. Both Myers and Crawford had entered guilty pleas. The portion of the statement read by Hopper included a statement by Crawford that a photograph of Vincent McCloskey seemed similar to a man he had seen from a distance during the planning stages of the conspiracy. McCloskey now contends that Hopper learned of this "identification" while representing him, and that its use prejudiced him and violated the confidentiality of the earlier attorney-client relationship.

The record does not support the contention that Hopper learned of Crawford's statement while representing McCloskey. Instead, the record indicates clearly that the government delivered the statement to defense counsel in compliance with 18 U.S.C. § 3500 when Crawford testified. Vincent McCloskey's attorney referred to the statement while cross-examin-

ing Crawford, as did the prosecutor on direct. Moreover, McCloskey was not injured by the allusion to the rather uncertain photographic identification, because before Myers testified, Crawford had already made an in-court identification of McCloskey.

**6.** Prior to oral argument appellant Carroll submitted a letter to the Chief Judge of this Court, requesting that his trial counsel, Michael P. Direnzo, Esq., not be permitted to represent him on this appeal. He claims that important tactical decisions made by Direnzo during the trial are so clearly wrong that he was deprived of the effective assistance of counsel, and that unless he is represented on appeal by a different attorney, his claim will not be presented.

We do not share appellant's evaluation of his counsel's performance. Attorney Direnzo's conduct of Carroll's defense must be evaluated in light of the strength of the prosecution's case, *see* United States ex rel. Marcelin v. Mancusi, 462 F.2d 36 (2d Cir. 1972). After reviewing the government's case against Carroll we conclude that Direnzo defended his client in an entirely reasonable manner.