107 F.3d 4
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Charles BOWEN, Defendant,
Mark Forbes, Defendant-Appellant.
 No. 96-1395.
 United States Court of Appeals, Second Circuit.
 Feb. 20, 1997.
 
 Appearing for Appellant: Devereaux Cannick, Aiello & Cannick, Maspeth, NY
 Appearing for Appellee: I. Bennett Capers, Asst. U.S. Atty., S.D.N.Y.
 PRESENT: HON. JOSEPH M. MCLAUGHLIN, HON. GUIDO CALABRESI HON. DONALD P. LAY,* Circuit Judges.
 ORDER
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Southern District of New York (Restani, J.), it is hereby
 
 
 1
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 
 
 2
 Defendant Mark Forbes appeals from a judgment entered on June 18, 1996, after a jury trial in the United States District Court for the Southern District of New York (Restani, J.).[1] Forbes was convicted of conspiring to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846; of distributing and possessing with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2; and of attempting to possess cocaine with intent to distribute it in violation of 21 U.S.C. § 846. Judge Restani sentenced Forbes to 210 months of imprisonment to be followed by five years of supervised release, and imposed $150 in mandatory assessments.
 
 
 3
 The evidence adduced at trial established the following facts about the two drug transactions from which this case arises--a crack sale on September 16, 1994, and an attempted purchase of cocaine on May 1, 1995. In early September 1994, pursuant to the instructions of DEA Special Agent Kevin Hersey, a confidential informant ("CI") introduced Forbes's co-defendant Charles Bowen to DEA Special Agent Robin Waugh, telling Bowen that Waugh wanted to purchase 1/8 kilogram of crack cocaine. On September 15, 1994, Bowen called Waugh from the CI's house to negotiate the terms of the exchange.
 
 
 4
 The next day, Bowen again called Waugh from the CI's house and agreed to meet her at a shopping center to consummate the exchange. Bowen also told Waugh that he was waiting for a ride to the shopping center. That evening, the CI answered two phone calls for Bowen from a person identifying himself as "Mark." On the first occasion, after giving the phone to Bowen, the CI overheard Bowen discussing the deal with "Mark" and asking if "Mark" had "the stuff." When he got off the phone, Bowen told the CI that "Mark" was going to bring "the stuff." Later, Bowen spoke to "Mark" a second time. After hanging up, Bowen told the CI that his ride would arrive in ten minutes. The CI and Bowen waited outside until three individuals arrived in a jeep. The CI recognized the driver as defendant-appellant Mark Forbes, whom he knew from the neighborhood, and noted the license plate number of the jeep.
 
 
 5
 While waiting at the shopping center at 8:15p.m. that evening, Waugh received a page on her beeper to a cellular phone number. When she called the number, Bowen answered and said he was in the parking lot of the shopping center. Toll records indicated that this cellular telephone was used to call the CI's residence earlier that day at approximately the times that the calls from "Mark" were received. Bowen then met Waugh, told her that the people in the jeep were "his boys," and said that the cellular phone number was that of his friend. He then gave Waugh 123.8 grams of crack for $2,700 and left the scene.
 
 
 6
 In April 1995, Agent Hersey directed the CI to arrange an introduction between Forbes and Detective Arturo Claudio. The CI did so, informing Forbes that Claudio was a drug dealer. On May 1, 1995, Forbes arrived at the CI's residence, driving the jeep that had been observed at the shopping center on September 16, 1994. Forbes agreed to purchase a kilogram of cocaine from Claudio for $18,000. They agreed to meet at 7p.m. that evening in a nearby supermarket parking lot.
 
 
 7
 At approximately 8p.m., Forbes arrived in a car at the parking lot, where Claudio was waiting for him with Task Force agents in surveillance positions. Forbes exited the car and took Claudio to the passenger side. He handed Claudio a bag that appeared to contain a large amount of cash. Claudio then stepped away from the car and gave the arrest signal. Forbes stated that he would park his car, and was in the process of doing so when police cars sounding their sirens entered the parking lot. Forbes sped away from the parking lot, engaging the police in a high-speed chase. The police later abandoned the chase for safety reasons. Forbes was arrested that evening.
 
 
 8
 Forbes argues on appeal that the district court erred in (1) refusing his application to change counsel; (2) instructing the jury; (3) making two evidentiary rulings; and (4) finding that there was sufficient evidence that he had attempted to purchase cocaine on May 1, 1995. These arguments lack merit.
 
 1. Application to Change Counsel
 
 9
 Forbes was represented by three successive attorneys while preparing for trial--Richard Ross, Noah Lipman, and James Randazzo. On January 30, 1996, less than a week before the scheduled trial date, Forbes stated that he had "irreconcilable differences" with Randazzo and asked for permission to substitute Deveraux Cannick as counsel. He also asked that the trial be postponed to March 11, 1996 to accommodate Cannick's schedule. Judge Barrington Parker (who subsequently assigned the trial to Judge Restani) denied the application.
 
 
 10
 Forbes alleges that the denial of his application violated his rights under the Sixth Amendment of the Constitution. It is true that a defendant is entitled to the assistance of counsel and must be given a reasonable time and a fair opportunity to secure counsel of his own choosing. United States v. Bentvena, 319 F.2d 916, 936 (2d Cir.1963). This right, however, "cannot be insisted upon or manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." Id. Moreover, "[t]he determination whether to allow a defendant a continuance to secure counsel of his own choosing is a matter within the traditional discretion of the trial court." United States v. Hall, 448 F.2d 114, 116 (2d Cir.1971). We therefore review Judge Parker's decision for an abuse of discretion. See United States v. Calabro, 467 F.2d 973, 986 (2d Cir.1972).
 
 
 11
 Judge Parker did not abuse his discretion in declining the application. He carefully laid out the grounds for his decision, noting that Randazzo was the third lawyer that had appeared in a period of approximately six months for the defendant, that the application was made shortly before trial and would delay the trial if granted, and that the record did not indicate that the defendant's ability to receive a fair trial would be compromised if the application was denied. These findings amply support the conclusion that Forbes was demanding new counsel in order to "obstruct ... orderly procedure in the courts."
 
 
 12
 The defendant's primary objection is that Judge Parker did not inquire into the alleged "irreconcilable differences" between him and his counsel. Judge Parker, however, did inquire into the nature of those differences. It was Randazzo himself who declined, on attorney-client privilege grounds, to specify the nature of the differences, even when he was encouraged to substantiate his claim in camera. Forbes also chose not to describe the nature of the conflict when specifically asked to do so. Having forced the court to make its determination shortly before the trial based on only vague allegations of "irreconcilable differences," the defendant cannot maintain that the court abused its discretion in denying his application. Cf. United States v. Todisco, 667 F.2d 255, 260-61 (2d Cir.1981) (no abuse of discretion where court denied application to change counsel when defendant's complaints shortly before trial consisted of no more than a disagreement about tactics and a vague allegation about the defendant's "loss of confidence" in the lawyer).
 
 2. Jury Instructions
 
 13
 Forbes next contends that the district court erred in instructing the jury. While the defendant acknowledges that the jury was properly instructed to consider the evidence as to each count separately, he maintains that the jury should also have been instructed to consider the evidence as to each transaction (i.e. the September, 1994 transaction and the May, 1995 transaction) separately. Because the defendant failed to object to the instructions below, we review the district court's charge for plain error. Fed.R.Crim.P. 52(b). This places a heavy burden on the defendant, as the district court may only reverse where the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 736 (1993).
 
 
 14
 The defendant cannot meet this burden. All of the cases he cites in his brief relate to the need for the judge to protect the defendant against the effects of prejudicial spillover between counts, rather than between transactions. Even if Forbes's novel and unsupported claim that the district court was also required to instruct the jury to distinguish between transactions had merit, failure to given the instructions could not possibly amount to plain error.
 
 3. Evidentiary Determinations
 
 15
 Forbes next challenges two evidentiary determinations made by the district court. First, Forbes contends that the district court erred in excluding statements, which were exculpatory as to him, that were made by his co-defendant Bowen in an affidavit and to the government during a proffer session. Forbes asserts that these statements should have been admitted as statements made against penal interest under Fed.R.Evid. 804(b)(3). In order for these statements to be admissible under Fed.R.Evid. 804(b)(3), however, "corroborating circumstances [had to] clearly indicate the trustworthiness of the statement[s]." Bowen's statements failed to meet this standard because they contradicted otherwise uncontroverted evidence. For instance, Bowen stated that Forbes's jeep was not present at the September 16, 1996 transaction, but surveillance officers identified a vehicle at the shopping center that Forbes stipulated at trial belonged to him. Similarly, Bowen stated that the CI drove him to the September 16 transaction, but the CI's testimony that he remained at home was corroborated by testimony that the case agent had several telephone conversations with the CI after Bowen left the CI's residence. The district court thus did not abuse its discretion in not admitting Bowen's exculpatory statements.
 
 
 16
 Forbes also challenges the admission of certain statements made by the CI. In these statements, the CI indicated that while Bowen was at his house on the afternoon of September 16, Bowen said to him: "[I'm] waiting for Mark to come by" and "Mark is on his way and he's going to bring the stuff." The district court admitted these statements as ones made in furtherance of a conspiracy, which are admissible against all members of such a conspiracy under Fed.R.Evid. 801(d)(2)(E). Forbes maintains that these statements were not made in furtherance of a conspiracy because the CI was not a co-conspirator but a "mere listener." Even assuming that this is true, however, the error was harmless, and therefore cannot constitute grounds for reversal. See United States v. Orena, 32 F.3d 704, 711 (2d Cir.1994) (harmless error analysis applies to admissions under Rule 801(d)(2)(E)). Forbes does not contest the admission of other testimony that established the same information conveyed by the challenged statements, such as the following statement Bowen made to "Mark" on the phone: "What time do you think you're going to be here? This girl is waiting for us. Do you have the stuff?" Like the challenged statements, this statement indicates that Bowen was waiting for Mark to show up with "the stuff" to sell to Waugh. The district court did not err in admitting these statements.
 
 4. Sufficiency of the Evidence
 
 17
 Forbes finally maintains that there was insufficient evidence to establish that Forbes attempted to purchase cocaine on May 1, 1995. A defendant challenging the sufficiency of the evidence bears a heavy burden. United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir.1995). We must uphold the jury's verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 18
 A defendant is guilty of an attempt to commit a crime if "he (1) had the intent to commit the crime, and (2) engaged in conduct amounting to a substantial step towards the commission of the crime." United States v. Rosa, 11 F.3d 315, 337 (2d Cir.1993) (citation and internal quotation marks omitted). Forbes contends that there was insufficient evidence to establish that he engaged in a "substantial step" towards the purchase of cocaine.
 
 
 19
 For conduct to constitute a "substantial step," it must be "strongly corroborative of the criminal intent of the accused." United States v. Davis, 8 F.3d 923, 927 (2d Cir.1993). The defendant's conduct must be "more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." United States v. Martinez, 775 F.2d 31, 35 (2d Cir.1985) (citation and internal quotation marks omitted). The determination of whether a "substantial step" has been taken "depends necessarily on the particular factual context of each case." Davis, 8 F.3d at 927.
 
 
 20
 The evidence adduced at trial amply demonstrated that a rational trier of fact could have found that Forbes had taken a "substantial step" toward the completion of the purchase of the cocaine. Through a series of conversations, Forbes developed his plan to purchase one kilogram of cocaine for $18,000 from Detective Claudio. He met Claudio in a parking lot, stated he was "ready," and showed him a blue plastic bag that he confirmed contained $18,000. At this point, Forbes had taken a "substantial step" toward the commission of the crime, as corroborated by the fact that he fled upon the arrival of the police. Cf. United States v. Manley, 632 F.2d 978, 987-89 (2d Cir.1980) (affirming attempt conviction of defendant arrested during raid where defendant had on his person cash to purchase the quantity of cocaine found on scale in apartment and where defendant ran from room where cocaine was located when police arrived).
 
 
 21
 Forbes argues that he did not take a "substantial step" because he had agreed with Claudio that he would not pay the cash until he had sampled the supposed drugs and found them to be of acceptable quality. It is not necessary, however, for the government to prove that the alleged "substantial step" was "the last act necessary before the actual commission of the substantive crime." Davis, 8 F.3d at 927 (citation and internal quotation marks omitted). Forbes alternatively argues that he abandoned his plan to purchase the cocaine when he entered his car. Given that he told Claudio that he was merely parking his car, and that there was no other evidence to show that he was abandoning the transaction, we reject this contention.
 
 
 22
 We therefore find that there was sufficient evidence to support the jury's verdict that Forbes attempted to purchase the cocaine.
 
 Conclusion
 
 23
 We have examined all of the defendant's contentions and find them to be without merit. The district court's judgment is therefore affirmed.
 
 
 
 *
 The Honorable Donald P. Lay, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation