UNITED STATES of America, Appellee,

v.

Charles ROSENTHAL, Defendant-Appellant.

No. 247, Docket 72–1915.

United States Court of Appeals, Second Circuit.

Argued Nov. 3, 1972.

Decided Dec. 11, 1972.

Steven B. Duke, New Haven, Conn., for appellant.

Jay S. Horowitz, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, Eugene F. Bannigan, Richard J. Davis and Peter F. Rient, Asst. U. S. Attys., on the brief), for appellee.

Before LUMBARD, FEINBERG and OAKES, Circuit Judges.

LUMBARD, Circuit Judge:

Charles Rosenthal was tried before a jury in the Southern District on an eight count indictment. Counts One through Four charged him with attempted evasion of his personal income taxes for the years 1963–1966, in violation of 26 U.S.C. § 7201. Counts Five and Seven charged Rosenthal, as the principal officer and sole owner of Corsair Film Productions, Inc. (Corsair), with failure to file income tax returns on Corsair's behalf for the years 1965 and 1966, in violation of 26 U.S.C. § 7203 and 18 U.S.C. § 2. Counts Six and Eight charged Rosenthal with attempted evasion of Corsair's income taxes for the years 1965 and 1966, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2. At the close of the Government's case, the district judge granted defendant's motion to dismiss Count Two. At the conclusion of the trial, the jury found Rosenthal guilty on Counts One, Three, Four, and Eight, and not guilty on Count Six.[1] Thus, the jury found Rosenthal guilty of personal income tax evasion for the years 1963, 1965, and 1966 and of corporate tax evasion for the year 1966. The district judge sentenced defendant to concurrent one-year terms of imprisonment for each count to run consecutively to a nine month term imposed after an earlier conviction on the charge of evading personal income taxes for 1962.[2] From this latest conviction, Rosenthal appeals to this court.

Rosenthal's alleged unreported income was acquired by a number of legal and illegal means.[3] The main source of revenue that the Government argues constituted unreported income was several substantial loans that Rosenthal received from three banks. Although revenue received from loans does not ordinarily constitute income for income tax purposes, the Government contended that the bulk of these loans was income to Rosenthal under the doctrine of James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1966), because they were solicited and received fraudulently in that Rosenthal had no intent to repay them. In addition, Rosenthal was charged with income from his sales of airline tickets that he had procured on credit, allegedly with no intent to pay for them, and from loans that he had received from two private individuals, allegedly with no intent to repay. Rosenthal was also charged with income in the tax years in question from various other sources, including interest, dividends, finder's fees, and constructive dividends from Corsair. None of this additional income was ever reported by Rosenthal on his income tax returns.

Four days before the scheduled commencement of the trial, defendant filed *pro se* a motion for a continuance to permit preparation for trial and a motion for leave to retain other counsel, or, in the alternative, to proceed *pro se*. In an affidavit supporting these motions, defendant swore that a bill of particulars had only been received the previous week and that his attorney had, without his knowledge, failed to prepare for the trial and was inexperienced in the trial of criminal cases. The new attorney

---

1. After the jury rendered its verdict, Counts Five and Seven were dismissed. Count Five charged defendant's failure to file Corsair's 1965 tax return, a lesser included offense to the evasion charge in Count Six on which the jury had acquitted. Count Seven charged failure to file Corsair's 1966 return, a lesser included offense to the evasion charge in Count Eight on which the jury had convicted.

2. Affirmed in United States v. Rosenthal, 454 F.2d 1252 (2nd Cir.), cert. denied, 406 U.S. 931, 92 S.Ct. 1801, 32 L.Ed.2d 134 (1972).

3. The amount of unreported income with which the Government charged Rosenthal was substantial. In the three tax years in question, 1963, 1965, and 1966, Rosenthal reported personal taxable income of $1,307.10, $6,922.22, and $4,357.50 respectively. The Government presented evidence that Rosenthal's unreported taxable income in these years amounted to $8,611.41, $32,276.84, and $62,908.46, respectively, for a total unreported taxable income of $103,796.71.

whom defendant sought to retain (and who is representing him on this appeal) could not be available on the date that the trial was scheduled to begin and thus, as a result of the state of the criminal calendar, the desired substitution of counsel would have necessitated a five month delay in the trial. Judge McLean denied the motion for a continuance and granted defendant leave to proceed *pro se*. However, in order to aid Rosenthal in the conduct of his defense, the court assigned the attorney who represented him at the first trial and on this indictment to sit at the counsel table during the trial and to assist the defendant when and if called upon.

On this appeal, Rosenthal asserts six grounds for reversal: 1) the Government's evidence was not sufficient for the jury to find that the defendant attempted to evade taxes due and owing, both from himself personally and from Corsair, for the years involved; 2) the district court erroneously excluded evidence offered by the defense; 3) the Government committed prejudicial error in submitting Exhibit 21d to the jury; 4) the district court committed prejudicial errors in its charge to the jury; 5) the court abused its discretion in denying Rosenthal's motion for a continuance; and 6) by permitting Rosenthal to defend *pro se*, the court denied him his right to counsel. We find no error and we therefore affirm the conviction.

■ Since the jury found against the defendant, the Government's evidence must be viewed most favorably to the Government, United States v. Marchisio, 344 F.2d 653, 662 (2d Cir. 1965). We conclude that the evidence was sufficient to permit the jury to find that Rosenthal attempted to evade taxes owing from himself personally for the years 1965 and 1966.[4] With regard to defendant's personal income, the evidence established that Rosenthal derived substantial income by swindling financial institutions. Indeed, the jury could infer that Rosenthal was in the business of defrauding lending institutions and derived substantial income from this activity. The Government showed that two financial statements submitted by defendant to two different banks in which defendant opened loan accounts indicated that his net worth must have increased by $250,000 in a two day period, a phenomenon that defendant has never attempted to explain. Similarly, defendant admitted that a representation on one statement that his income for the preceding year had been $45,000 should have read $5,500. Moreover, defendant offered no explanation of how stocks posted as collateral at one of the victimized banks proved to be worthless when his account was liquidated. From this evidence, the jury could conclude that Rosenthal obtained the funds from these banks through the use of financial statements containing significant misrepresentations about his net worth and annual income.

The evidence also showed that Rosenthal was incurring obligations that he must have known to be far in excess of his ability to repay. Thus, from the fraudulent practices utilized in getting several of the loans, from the volume of the loans and the fact that defendant was involved in identical borrowing practices with several banks, and from the fact that defendant never did repay the loans, the jury could find that Rosenthal knew he would not be able to, and that he did not intend to, repay the loans at the time that he received the funds.

■ Defendant's contention is that the evidence merely showed that he was an over-optimistic borrower—not a defrauder or a swindler. He notes that collateral was given and payments were made on some of the loans in question. He argues that, since the Government has charged him with income in the amount of the loans minus his payments

---

4. As to Count I charging individual tax evasion in 1963, on which he received a sentence equal to and concurrent with his sentence on the other counts, Rosenthal does not challenge the sufficiency of the evidence.

and the value of the collateral, this is placing an impossible reporting burden on the taxpayer; for it requires him to predict how much of the loan will remain unpaid in the future and report this as income in the present. If this were the proper legal theory, it would indeed place an unreasonable burden on the taxpayer, especially at the risk of a tax-evasion prosecution. However, the defendant misperceives the legal theory under which he is charged with income.[5]

On the evidence, the defendant could be treated as one in the business of fraudulently deriving funds, in the form of loans, from financial institutions. As we have indicated, there was enough evidence for the jury to find that he did not intend to repay the loans at the time he received them. Therefore, the entire amount received in the form of a loan should be treated as income in the year received. Subsequent payments in later years should not be netted against the amount received but are properly viewed as made for the purpose of keeping defendant's fraudulent enterprise afloat. As such, they are ordinary and necessary business expenses and should be deducted from income in the year of payment. This theory places no unreasonable burden on the taxpayer deriving his income in a manner like Rosenthal's.

■■ Defendant also argues that revenue received in the form of loans is not income under the doctrine of James v. United States, *supra*. *James* held that profits derived from illegal activities were includible in gross income. The test is whether the taxpayer acquired things of value "without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition." 366

U.S. at 219, 81 S.Ct. at 1055. Therefore, defendant argues that amounts received in the form of loans should not in any event be treated as income because there is an express "consensual recognition of an obligation to repay." We find this argument unconvincing. As we have indicated, there was ample evidence from which the jury could conclude that Rosenthal did not intend to repay the loans. Thus, as Chief Judge Friendly wrote in affirming the appellant's earlier conviction, "the trier of the facts could permissibly find there was no 'consensual recognition' even if Rosenthal had daily recited a litany of intention to pay. The *James* test includes sophisticated procedures for obtaining property by fraudulent means as well as the cruder method of dipping the hand in the till." United States v. Rosenthal, 454 F.2d 1252, 1254 (2nd Cir. 1972).

■■ Even if the evidence was sufficient to show that the defendant had substantial unreported income in the years in question, the defendant contends that the evidence is not sufficient to show willfulness, which is a necessary element in any tax evasion charge. Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). In addition to the jury's necessary conclusion that defendant intended to defraud various financial institutions, the defendant repeatedly failed to report as income in successive tax years the substantial amounts of his ill-gotten gains. He also did not disclose to his accountant the amount that he received from these sources. From these facts, we cannot say that it was impermissible for the jury to find willfulness. See United States v. Procario, 356 F.2d 614, 618 (2nd Cir. 1966), cert. denied, 384 U.S.

---

5. The figures used by the Government appear to indicate that it determined the amount of income from the loans by netting the amount received against the amounts of any subsequent payments. Although, as our opinion indicates, we conclude that the entire amount received in the form of loans, irrespective of later repayments, was income to Rosenthal, this results in charging him with even more income than was asserted by the Government. Since the exact amount of unreported income is not important to a tax evasion charge, this variance has no effect on the result in this case, other than to dispel defendant's claim that charging him with income from the loans placed on him an unreasonable reporting burden.

1002, 86 S.Ct. 1923, 16 L.Ed.2d 1015 (1966); United States v. Tolbert, 406 F.2d 81, 83 (7th Cir. 1969); and United States v. Frank, 437 F.2d 452, 453 (9th Cir. 1971). Similarly, as to the corporate tax evasion charge, the Government's evidence showed that Rosenthal had prepared a financial statement showing taxable income in 1966 for Corsair but ignored his accountant's warning that he was required to file a return if there was such income. In addition, there was evidence that Rosenthal diverted much of Corsair's funds into his personal accounts. This was enough for the jury to find the willfulness element in the corporate tax evasion charge.

■■■ Defendant's second contention concerns the district court's exclusion of testimony and other evidence offered by the defense. We see no need for an extended discussion of this contention, for it seems clear to us that the court's rulings were correct. The exclusion of defense Exhibit L was proper because at that time the exhibit had no demonstrable relevance. Later, when its relevance became clear, the court offered to receive it; however, by then it had been lost by defendant. As to defense Exhibit M, this consisted of a confused mass of papers offered to support defendant's testimony that he had suffered a loss as a result of cashing checks for one who was then bankrupt. Although the Government stipulated that Rosenthal had made a claim against the bankrupt, it objected to the exhibit because, in its disorganized form, it could only confuse the jury. We cannot say that the district court erred in sustaining this objection. Finally, there was nothing wrong with the court's exclusion of defendant's testimony about his general lack of preparation for trial and his ignorance that an unrepaid loan constituted income. Such testimony was clearly irrelevant and was properly excluded.

■■■ Rosenthal's third major contention is that he was severely prejudiced when the Government submitted Exhibit 21d to the jury. This exhibit was a schedule summarizing the Government's evidence of alleged unreported income. The exhibit was received without objection. However, defendant objected when he discovered that the schedule characterized the sources of this income in such terms as "loan-sharking," "forgery," "swindling," and "fraud." The district judge sustained this objection, reprimanded the Government for inserting such characterizations, and instructed the jury that it should disregard these terms. But the court denied defendant's motion for a mistrial. Defendant's argument that the error of including these terms was not cured by the court's instruction is troubling. However, it appears that from the beginning of the trial the jury had been told, without objection by defendant, that much of Rosenthal's alleged income arose from illegal activities. Moreover, defendant and his tax attorney had seen the exhibit before it was given to the jury and there was no objection at that time. Therefore, we feel that the district court's instruction was sufficient and that the court did not err in denying the motion for a mistrial.

■■■ The fourth assertion on appeal concerns the correctness of several of the instructions that the court gave to the jury. Objection to these instructions is made for the first time on appeal. Therefore, in order for any error to be ground for reversal, Rosenthal must show it to be "plain error" affecting substantial rights. See F.R.Cr.P. 30 and 52(b). We find no error in the instructions on the issue of willfulness (see United States v. Schipani, 362 F.2d 825, 831 (2nd Cir.), cert. denied, 385 U.S. 934, 87 S.Ct. 293, 17 L.Ed.2d 214 (1966)), on the taxability of the proceeds received by Rosenthal from the lending institutions in the form of loans (see United States v. Rosenthal, 454 F.2d 1252, 1254 (2nd Cir.), cert. denied, 406 U.S. 931, 92 S.Ct. 1801, 32 L.Ed.2d 134 (1972)), or on the legal effect of the jury's believing Rosenthal's claim of unreported losses in the tax years in is-

sue. As to the court's instruction regarding the necessity or proving an affirmative fraudulent act under the corporate tax evasion charge in Count Eight, even if the charge was somewhat deficient, we are of the view that any deficiency was not "plain error" and that the jury was properly focused upon Rosenthal's alleged attempt to evade corporate taxes instead of merely his failure to file corporate returns, as required by Spies v. United States, *supra*.

Rosenthal's final two arguments for reversal are somewhat related: 1) the district court's denial of his request for a continuance, in the face of defendant's assertion that his counsel was unprepared and inexperienced in criminal cases and his desire to retain other counsel, was an abuse of discretion; and 2) by permitting defendant to proceed *pro se*, the court violated his sixth amendment right to the effective representation of counsel. Both of these arguments are without merit.

■ The decision whether to grant a continuance rests within the discretion of the district judge, the sole requirement being that his decision be reasonable. United States v. Hall, 448 F.2d 114 (2nd Cir. 1971). As stated by the Supreme Court in Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 850, 11 L. Ed.2d 921 (1964). "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."

The indictment on which this prosecution was based was filed April 1, 1970, almost two years before the scheduled commencement of the trial. The trial date had been agreed upon six weeks in advance, after the court had granted two delays to await the outcome of an earlier prosecution and the appeal therefrom. The lawyer about whose inexperience and lack of preparation Rosenthal was complaining had represented him since the filing of the indictment and was his trial counsel in the earlier prosecution, which had arisen from the same tax investigation as this action and shared a common legal theory and similar factual contentions. And the motion for the continuance was made only four days before the scheduled commencement of the trial.

■ In light of Rosenthal's long association with his counsel, his asserted discovery that his counsel was unprepared and inexperienced in criminal matters just four days before trial merits no consideration. Moreover, Rosenthal has failed to demonstrate any prejudice from the denial of the continuance. Therefore, we cannot say that the district court abused its discretion in denying the motion for a continuance. As we said in United States v. Llanes, 374 F.2d 712, 717 (2nd Cir.), cert. denied, 388 U.S. 917, 87 S.Ct. 2132, 18 L.Ed.2d 1358 (1967):

> We and other courts of appeals have repeatedly made clear that the right to counsel "cannot be . . . manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." [citation omitted] Judges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay.

■ As to defendant's argument that his motion to proceed *pro se* did not constitute an intelligent waiver of the right to counsel and that it was thus error for the district judge to permit him so to proceed, we conclude that Rosenthal voluntarily and intelligently waived his right to be represented by counsel and elected to proceed *pro se*. In United States v. Plattner, 330 F.2d 271 (2nd Cir. 1964), this court indicated that a district judge should inform a defendant who wishes to proceed *pro se* of his right to be represented by counsel and of the advantages of being so represented. We articulated the goal to be

achieved by so informing the accused in the following terms:

> [T]here must be a record sufficient to establish to our satisfaction that the defendant "knows what he is doing and his choice is made with eyes open." P. 276

 Although it would have been preferable if the district judge had given the information and advice prescribed in *Plattner*, we cannot say that his failure to do so was error in light of all the circumstances that lead us to conclude that Rosenthal was well aware of his right to counsel and of the advantage of representation by counsel. Rosenthal had been through an earlier tax evasion trial and appeal involving similar factual and legal issues with the assistance of counsel. In fact, at the time he filed his motion to proceed *pro se*, he had retained two separate counsel, the one whom he was then dismissing and the one who is now representing him on this appeal.[6] Moreover, even after granting Rosenthal's motion, the court moved to protect defendant's rights by calling on his discharged counsel to remain available at defendant's table to advise him, and counsel did so. This factual background is "sufficient to establish to our satisfaction that the defendant" knowingly and willfully waived his right to counsel. Therefore, although explicit warning and advice by the court may be necessary in some cases, as we held it to be in United States v. Harrison, 451 F.2d 1013 (2nd Cir. 1971), to give adequate assurance that any waiver of the right to counsel is knowing and voluntary, on the facts of this case, we find that the court's failure to do so was not error.

 At oral argument in response to a question from the bench, the assistant United States Attorney stated that, at the trial of the earlier indictment before another district judge, the Government moved to consolidate trial of that indictment with the one underlying this prosecution and the defense did not object to this action. Nevertheless, the court denied the Government's motion. In light of the common factual and legal issues involved, and the saving in time and expense to the court, to counsel, and to the parties that would have resulted from consolidation, we feel that the refusal to consolidate was an abuse of discretion.

Affirmed.

---

6. Counsel who is now representing Rosenthal was also retained to represent him on the appeal of the earlier prosecution and was the attorney whom Rosenthal sought to substitute in this action. However, since the new counsel could not be available to try this case until May or June, this would have necessitated another five or six month delay in the trial.