**UNITED STATES ex rel. Harold KONIGSBERG, Petitioner,**

**v.**

**Leon J. VINCENT, Superintendent of Green Haven Correctional Facility, Respondent.**

**No. 73 Civ. 473 HRT.**

United States District Court,
S. D. New York.

Jan. 13, 1975.

Jay Goldberg, New York City, for petitioner.

Richard Kuh, Dist. Atty., New York County by Peter J. Driscoll, Anthony Girese, and Frank Rogers, New York City, of counsel, and Louis J. Lefkowitz, Atty. Gen., State of New York by Hillel Hoffman, New York City, for respondent.

## OPINION

TYLER, District Judge.

Petitioner, Harold Konigsberg, is presently serving a sentence at Green Haven Correctional Facility, Stormville, New York. After a trial by jury in the Supreme Court of New York, New York County, (Gellinoff, J.), he was convicted on April 10, 1967 of conspiracy to commit extortion and four substantive counts of extortion. A multiple offender, he was given concurrent sentences of twenty to thirty years on each extortion count and a sentence of ten to fourteen years on the conspiracy count, the last to be served consecutively to the extortion sentences.

Petitioner's conviction was affirmed without opinion by the First Department of the Appellate Division of New York, People v. Konigsberg, 34 A.D.2d 616, 309 N.Y.S.2d 993 (1970). His appeal to the New York Court of Appeals was dismissed on February 1, 1971 for failure to prosecute. Petitioner applied for certiorari and was denied on October 12, 1971 (404 U.S. 836, 92 S.Ct. 123, 30 L.Ed.2d 68). His subsequent motion to reinstate his appeal to the New York Court of Appeals was denied by that court on January 12, 1972.

In this court, petitioner applied for a writ of habeas corpus, contending that his conviction is invalid for a number of reasons, including excessive prejudicial publicity, a prejudiced trial judge, and an incompetent waiver of his constitutional right to counsel. His petition was referred to United States Magistrate Sol Schreiber pursuant to 28 U.S.C. § 636(b)(3). On October 4, 1973, Magis-

trate Schreiber submitted his report, finding petitioner's contentions without merit and recommending that the petition be denied without a hearing. In a memorandum dated October 30, 1973, this court approved that report and denied the petition with one exception— the issue of petitioner's competency to waive counsel. An evidentiary hearing on that question was held on April 1 and 2, 1974, at which hearing Mr. Justice Gellinoff testified, as did several psychiatrists who had examined petitioner.

## FINDINGS OF FACT

Petitioner is a novice neither to judicial proceedings nor to psychiatric examinations. On October 13, 1950, he was convicted of robbery in the County Court of Hudson County, New Jersey. In 1954, he was adjudicated insane by a Superior Court judge in Trenton, New Jersey. Following petitioner's arrest in this case on October 23, 1963, the late Robert Shaw, United States District Judge, District of New Jersey, remanded him to federal custody to commence service of a ten year federal sentence which had been imposed on July 16, 1963 for possession of stolen goods. Petitioner was indicted by a New York County grand jury in this case on December 10, 1963.

On November 19, 1964, petitioner was committed by order of the Supreme Court of New York, New York County (Schweitzer, J.), for an examination of his competency to stand trial, pursuant to then New York Code of Criminal Procedure, § 658. The issue according to that section was whether ". . . such defendant is in such state of idiocy, imbecility, or insanity that he is incapable of understanding the charge, indictment or proceedings or of making his defense." [1] Found competent by the examining psychiatrists Lachman and Cassity, petitioner moved to controvert

their report on January 18, 1965. Accordingly, the court commenced an evidentiary hearing, at the conclusion of which, on April 27, 1965, Mr. Justice Gellinoff found petitioner capable of understanding the charges and proceedings and of making his defense, and confirmed the psychiatric report.

On September 4, 1965, while serving the sentence imposed by Judge Shaw, petitioner was admitted to the Medical Center for Federal Prisoners in Springfield, Missouri. Here he was treated and examined regularly. A formal staff report of January 10, 1966 recommended that petitioner be certified psychotic, but noted that his behavior was changing with therapy, so that ". . . any decision related to future competency to stand trial would have to be reserved in the light of future examinations." In the staff examination of May 27, 1966, Dr. Settle, a special psychiatric consultant, noted that though the patient remained mentally ill,

> "[a]t times he shrewdly perceived his environment and surroundings in order to obtain satisfaction of momentary needs. He seemed to be able to shrewdly assess the reactions of various individuals and at times use his symptoms for secondary gains when these seemed to his advantage."

In August, 1966, Dr. Alderete noted that although the Springfield staff believed petitioner still incompetent to stand trial, ". . . this is really a legal question for the court to decide."

On October 28, 1966, petitioner made a motion to stay trial and have himself return to a federal hospital and/or to have a state hearing held on his competency to stand trial. He was then committed to Kings County Hospital, where he was examined on November 4, 1966 by two state psychiatrists, Drs. Bromberg and Jimenez, who found petitioner

---

1. The presently applicable statute, New York Criminal Procedure Law, § 730.10, frames the issue as whether the defendant "lacks capacity to understand the proceedings against him or to *assist* in his own defense" (McKinney's Consol.Laws c. 11–A, 1971, emphasis supplied). However, this section became effective September 1, 1971 and therefore was never applicable to petitioner.

competent to stand trial. After a second competency hearing was held, Mr. Justice Gellinoff, on December 2, 1966, also found petitioner competent to stand trial.

Petitioner's trial began on December 7, 1966. On January 3, 1967, after some twelve days of trial, petitioner announced that

"[t]he defendant, Harold Konigsberg, as of now, has representation of— Harold Konigsberg will be represented by counsel, himself and Judge Roy Bean will from hereafter take care of all matters, talk to all witnesses, examine all witnesses." Trial Minutes (TM) at 593–594.

Mr. Justice Gellinoff replied:

"Yes, that is perfectly okay. You can represent yourself and have any evidence presented on your behalf that you wish. Miss Kahn [a New York attorney, now presumed deceased] is directed by the Court to continue to sit at counsel table and to be of such assistance to you as you wish to avail yourself of." Id. at 594.

The trial then continued, without any further statement at that time concerning the waiver by the judge or by Miss Kahn, who had been acting as petitioner's counsel since 1964. On January 20, the trial judge made a specific finding on the record that he had determined petitioner capable of conducting his defense.[2] However, he did not specifically discuss petitioner's competency to waive counsel.

Years after the event, petitioner contends that in light of his mental condition, his dismissal of counsel did not constitute an intelligent and understanding waiver of a fundamental constitutional right, so that his conviction is in-

valid. He further argues that a third competency hearing should have been held to determine whether he was sufficiently competent to make such a waiver.

Respondent asserts, first, that petitioner had the assistance of counsel during the trial to the extent that he wished to avail himself of it, so that he did not waive counsel. Second, respondent argues that from evidence already before Mr. Justice Gellinoff at the time of the waiver, he could and did determine that petitioner understood the charges, appreciated the risks, knew what his rights were, and was fully aware of what he was doing when he waived counsel, so that no further competency hearing was necessary to determine competency to waive counsel.

## I. Petitioner's Waiver of Counsel

Two experienced defense attorneys, Frances Kahn and later Frank Lopez, remained available by court direction at petitioner's table to advise him after his announcement of self-representation. After January 5, when he began to aid Kahn in petitioner's trial, Lopez spent 90% of his time on related matters. He interviewed certain witnesses, issued subpoenas, explained legal terms to petitioner, and conferred with petitioner when the trial was not in session (Federal hearing transcript [FHT] at 83, 84, 92). However, Lopez testified that petitioner made the decisions, and, "I could act as his attorney only to the extent that he would permit me to do so," FHT at 79. The trial transcript shows that petitioner examined witnesses at the trial, made objections, and delivered the summation for the defense. These activities indicate that petitioner was basically in charge of conducting

---

2. "The Court is satisfied beyond any possible or conceivable doubt that you have embarked on a deliberate and concerted and preconceived and organized plan to pretend that you are insane and to prevent the trial of this indictment. You have, going back several years, malingered and feigned insanity. We have had two hearings and as a result of both of these hearings you have been de-

termined to be fully able to understand the nature of the charge against you and fully capable of making your defense.

Now Mr. Konigsberg, the Court is satisfied beyond any possible doubt that you are able to conduct your defense; that you understand the nature of the charge. . . ." Trial Minutes at 2426.

his own defense, *see* Westbrook v. Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L. Ed.2d 429 (1966), and that he in fact had waived his right to be represented by counsel, despite their continued presence in court, *see* United States v. Rosenthal, 470 F.2d 837 (2d Cir. 1972).

## II. *Petitioner's Competency to Waive Counsel*

 A defendant's Sixth Amendment right ". . . to have the Assistance of Counsel for his defence" has been recognized in both Federal and New York State law as "an essential requirement of due process," United States ex rel. Jones v. Fay, 247 F.Supp. 26, 28 (S.D.N.Y.1965); People v. Witenski, 15 N.Y.2d 392, 259 N.Y.S.2d 413, 207 N.E.2d 358 (1965). This constitutional right to counsel applies to state as well as federal proceedings. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). On the other hand, the Court of Appeals for this circuit has recognized that a defendant's right to conduct and manage his own case *pro se* is also "a right arising out of the Federal Constitution and not the mere product of legislation or judicial decision." United States v. Plattner, 330 F.2d 271, 273 (2d Cir. 1964). The Ninth Circuit has held that because of the constitutional nature of this right, no showing of prejudice is necessary for reversal of a conviction on the ground that the defendant was not allowed to represent himself, United States v. Price, 474 F.2d 1223, 1227 (9th Cir. 1973). In the latter case, it was held that "[t]he court may not deny a defendant the right to represent himself because he lacks expertise or professional capabilities. When a proper request is made, the only question for the court is whether the defendant has the capacity to decide intelligently and to understand what he is doing, *i. e.*, can the defendant make a valid waiver of his right to counsel?" *Id.* at 1227. The line of demarcation between these conflicting constitutional rights, to be assisted by counsel and to represent oneself, is thus

the validity of the defendant's waiver: was it competently and intelligently made? *See* Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

 Where a defendant's competence has been put in issue, the trial judge must first determine that the defendant is capable of making an intelligent and understanding waiver before deciding whether such a waiver has been made. In Westbrook v. Arizona, *supra,* the Supreme Court ruled that although a hearing had been held on the issue of Westbrook's competence to stand trial, that hearing did not of itself foreclose the issue of whether or not defendant was competent to waive his constitutional right to counsel. The case was remanded to the state court for a hearing and inquiry into this latter issue. Although he held two lengthy hearings on the issue of petitioner's competence as that issue was then formulated in New York law, Mr. Justice Gellinoff did not conduct a separate hearing concerning petitioner's competence to waive counsel. At this point, therefore, it must be determined whether the trial judge inquired into that issue prior to accepting petitioner's waiver. Petitioner was found competent to stand trial under a former New York law which required a finding that petitioner was capable of "making his defense," N.Y.C.C.P. § 658, not just able to "assist in his own defense," the statutory requirement upon which the *Westbrook* hearing was based, 17 Ariz.R.S. Rules of Criminal Procedure, Rule 250. In his careful report, Magistrate Schreiber noted that the stricter New York standard could be construed as including a finding concerning defendant's ability to conduct his own defense and hence waive a constitutional right, as "[u]nder this standard, the petitioner not only had to be able to discuss and understand his case, but also to rationally consider the evidence and make necessary decisions he was faced with during the course of the trial. People ex rel. Bernstein v. McNeill, 48 N.Y.S.2d 764 (Sup.Ct.1944). Accord, People v. Swallow, 60 Misc.2d

171, 301 N.Y.S.2d 798 (Sup.Ct.1969), People ex rel. Butler v. McNeill, 30 Misc. [2d] 722, 219 N.Y.S.2d 722 (Sup.Ct. 1961)." This court, however, found that the state trial record did not conclusively indicate whether the trial judge inquired into the question of an intelligent waiver, whether for his determination of this issue he relied upon the doctors' testimony in the competency hearings, and, if so, whether the doctors were asked to focus on petitioner's competency to waive counsel. Therefore, though mindful of the dangers of a retrospective determination of such an issue, *see* Pate v. Robinson, 383 U.S. 375, 387, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), this court held an evidentiary hearing as prescribed in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ From the testimony adduced at the evidentiary hearing and the light it sheds upon the earlier proceedings, this court concludes that Mr. Justice Gellinoff made a sufficient inquiry into the issue of petitioner's competency to waive counsel and that there was sufficient evidence from the competency hearings upon which to base his conclusion that petitioner was so competent.

The standards by which a court is to determine capacity for an understanding waiver of counsel are based on the defendant's comprehension in each case of his waiver and its consequences:

> ". . . whether the defendant understood that he had a choice between proceeding *pro se* and with assigned counsel, whether the defendant understood the advantages of having one trained in the law to represent him, and whether the defendant had the capacity to make an intelligent choice."

United States v. Spencer, 439 F.2d 1047, 1050 (2d Cir. 1971). See, also, United States ex rel. Brown v. Fay, 242 F.Supp. 273 (S.D.N.Y.1965).

■ It is not the defendant's legal skill but rather his capacity to choose that matters:

> "[t]he fact that the defendant's pro se representation turned out to be inade-

quate and ineffective is irrelevant to the issue of whether the waiver of his right to counsel was knowingly or intelligently made . . . ."

United States v. Calabro, 467 F.2d 973, 985 (2d Cir. 1972). The court's determination ". . . must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, *supra*, 304 U.S. at 464, 58 S.Ct. at 1023; Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

In this case, the record shows that the trial judge knew that he was dealing with a man who had been in court and had been represented by counsel many times: "I knew that this man . . . was prisonwise, he knew all about lawyers, he knew all about courts, he knew all about sentences" (FHT at 117). Furthermore, before petitioner requested permission to represent himself, he had been represented by counsel throughout the competency hearings and for almost one month after trial began. The trial judge, therefore, had a reasonable basis for concluding that petitioner knew of his right to counsel and the advantages of having a lawyer's aid. *See* United States ex rel. Jefferson v. Fay, 364 F.2d 15 (2d Cir. 1966).

The significant issue, then, is the sufficiency of the trial court's inquiry into petitioner's capacity to make an intelligent choice. In the competency hearings, Mr. Justice Gellinoff carefully explained to the testifying psychiatrists what he believed to be the statutory requirements for fitness to stand trial and to make a defense, distinguishing this from a finding of some limited comprehension or insanity that would not preclude the defendant's being competent to make his defense. *See, e. g.* Competency Hearing Transcript [CHT] at 115, 149–150, 504–5, 709–10, 1831–1834. Admittedly, the judge never specifically referred to competency to waive counsel and in fact at times framed the issue in terms of aiding counsel as opposed to devising a defense (e. g. CHT at 817).

But, testimony of the psychiatrists at the state competency hearings and the hearing before this court indicates that as psychiatrists they did not observe such a legal distinction and that many of them based their evaluations on factors relevant to competency to waive counsel.[3] At the first competency hearing, Dr. Train, a psychiatrist and prosecution witness, testified:

> "In the sense that the man is not suffering from idiocy, imbecility, or insanity, he would then be able to understand the nature of his charge, his indictment, and the proceedings against him, and . . . if he willed, he would prepare or make his defense.
>
> I am not sure that this isn't his best defense from a legal viewpoint, not being trained in law and not being trained in evidence. I have no idea as to why he does not want to. I don't find any reason, according to all the testimony, as to why he shouldn't be able to." CHT at 1067.

Other aspects of competency about which the psychiatrists and other doc-tors testified at the competency hearings include petitioner's ability to speak properly and comprehend fully (e. g. CHT at 255, 477, 675, 989), his rationality in at first retaining his counsel (CHT at 1895–97), and his comprehension of the charge and of court proceedings (e. g. CHT at 793, 819, 933, 1130, 1475, 1634). As these areas were thus explored in the hearings, there was some basis for Mr. Justice Gellinoff's statement at the federal hearing that:

> ". . . implicit in my findings of whatever nature and in whatever manner I expressed them, there was a finding in my mind that that man knew the nature of the charge, he knew the procedure, he knew the routine, he knew what it was all about and was fully competent and capable of handling himself." FHT at 113–114.

■ Defense counsel at the hearing focused on the issue of whether petitioner was aware of the worst possible consequences of his waiver—the worst sentence he might receive if found guilty as charged.[4] But, in each of the cases cit-

---

3. For example, Dr. Wilinsky stated in the second competency hearing that the criteria used to determine petitioner's competency to stand trial by him and the staff members of the Springfield, Mo., Medical Center for Federal Prisoners were as follows:

"First, we try to assess whether he has awareness of the charges pending against him, . . . whether he knows that he will be in a courtroom and the type of courtroom, that is, is it a federal, state or county, civil, so forth, criminal. . . . Then we try to assess whether he knows who will be in a courtroom, the principals of the court and their various functions, including the judge, prosecuting attorney, defense counsel, members of a jury . . . · and so forth.

We try to assess whether he has a knowledge of the types of punishments that could be levied by the court . . . also whether he has a knowledge of what pleas may be entered before the court and the implications of various pleas and whether he is educable to these facts. . . .

The second broad area is best described by his ability to take part in the proceeding itself. It's a behavioral thing. Can he communicate reasonably well, reasonably and logically with the Court and also with defense counsel?

Can he reasonably assess the testimony of witnesses that might appear against him as well on his own behalf?

Can he reasonably assess various instructions given to him by his own defense counsel? Can he maintain some type of legal strategy in a consistent fashion?

The last area that we try to assess is the potential for suicidal, homicidal or aggressive behavior or breakdown in a courtroom situation. . . ." CHT at 1610–1611. Dr. Wilinsky found petitioner incompetent to stand trial under these criteria (CHT at 1609), though he later claimed to have withheld those conclusions (FHT at 48). Dr. Alderete, the chief psychiatrist at Springfield, although at first uncertain, then stated at the second hearing that he believed petitioner "not of sufficient degree of insanity that he could not be capable [of understanding the charge or proceeding or of making his defense]," CHT at 1528.

4. "I am conceding that he is sane, because you found him to be sane. I concede he knew he had a right to a lawyer and I as-

ed by petitioner on this issue, Von Moltke v. Gillies, *supra*; United States ex rel. Brown v. Fay, *supra*; and Sieling v. Eyman, 478 F.2d 211 (9th Cir. 1973); the defendant was pleading guilty, not just waiving counsel. A defendant who is pleading guilty should certainly know the maximum penalty he may suffer as a direct consequence of his plea. Waiving counsel in a criminal case, however, is not tantamount to pleading guilty to a criminal charge. Although it is certainly important that a defendant appreciate the importance of the procedings in which he is involved and their possibly severe consequences, it is not necessary that he know and be able to detail the precise range of allowable punishments. The psychiatrists who testified at the hearings appear to have differed on the issue of petitioner's appreciation of the proceeding's possible consequences.[5] But it is clear that the trial judge had heard testimony on this issue before he permitted petitioner to waive counsel.

In the federal hearing, Dr. Bromberg, a psychiatrist who had also testified at the second competency hearing, stated:

"My opinion is that on that date [January 3, 1967] he could understand the charges against him, assist in his defense, and waive his right to be represented by counsel and represent himself.

· · · · ·

It is my opinion he could make an intelligent waiver of counsel on that date." FHT at 183.

Although the Supreme Court warned against such retrospective determinations of competence in Pate v. Robinson, *supra*, here, unlike in *Pate*, there had been psychiatric examinations and a competency hearing at approximately the same time as petitioner's waiver.

Literally, the psychiatrists had been asked to focus on another issue—competency to stand trial; but many of the factors relevant to the waiver issue were explored and may serve as a contemporaneous record by which to evaluate Dr. Bromberg's subsequent conclusions. Dr. Bromberg himself cited his November 4, 1966 examination as one of the bases for his conclusion. FHT at 200.

To summarize, this court finds that evidence concerning petitioner's rationality in at first retaining his counsel, his comprehension of court proceedings and his awareness of the possible consequences of his trial was presented to Mr. Justice Gellinoff at the competency hearings. Although his separate inquiry is not on the record, the judge stated at the federal hearing that he made a determination, apart from the issue of competency to stand trial, ". . . that this man is competent to know that he is depriving himself of the formal services of the lawyer to which he is entitled and he is deliberately assuming the risk of representing himself."[6] This court accepts his testimony and finds that the evidence on the record provided a sufficient basis for making such a determination of competency, which determination should stand. Such a determination, coupled with the trial judge's finding that petitioner knew the worst of the possible consequences (FHT at 142–144), constitutes a sufficient inquiry for the purposes of Westbrook v. Arizona, *supra*.

### III. The Validity of Petitioner's Waiver

One final issue remains. Given that petitioner was competent to waive counsel, did he in fact execute a valid waiver? At the instant when petitioner announced that he would represent himself, Mr. Justice Gellinoff did not in-

---

sume and concede that he surrendered counsel, but the question is did he do it intelligently with an awareness of the risk of the consequences." FHT at 143.

5. Compare the statements of Dr. Alderete, CHT at 1547, and Dr. Semer, CHT at 1832,

with the testimony of Drs. Wilinsky and Bromberg at the federal evidentiary hearing, FHT at 22 and at 200–201.

6. FHT at 122.

form him of his rights or of the consequences of waiving counsel. In United States v. Harrison, 451 F.2d 1013, 1014 (1971), a federal criminal case, the Court of Appeals for this circuit held that the procedure to be followed by a court before allowing waiver of counsel involved:

". . . giving specific instructions to the accused informing him of his rights and then . . . having the accused make an intelligent waiver of such rights."

 Although the Court of Appeals discussed this procedure in terms of the Sixth Amendment right to counsel, it is not clear from the federal cases and federal rules cited in the discussion whether the Court intended that such a procedure be applied by the state courts or that it have a retrospective effect thereupon. It may be pertinent, perhaps, to note that *Harrison* has not been cited or applied by any state court in this circuit.

 Assuming *arguendo* that the *Harrison* rule is to be retroactively applied to state cases, the validity of a waiver must be examined in light of all the circumstances, as discussed *supra*, and failure to give *Harrison* instructions may not be plain error, given the particular circumstances of the case. United States v. Rosenthal, *supra*, 470 F.2d at 845. Circumstances cited in that case included defendant's past involvement in a similar tax evasion trial and appeal where he was assisted by counsel, and the protection afforded defendant by the court's having his discharged counsel remain available at his table to advise him. *Id.* at 845. Both of those circumstances were present here. As noted earlier, petitioner had been involved in many criminal proceedings where he was represented by attorneys, and he had been represented in this case for some time. Moreover, although this court has found that petitioner waived his right to counsel despite the continued presence of two attorneys at his defense table, their presence is certainly a factor to be considered in assessing the need for *Harrison* instructions. Given the trial judge's

in-depth acquaintance with petitioner and the issue of his competence, he was able to determine without further questions that petitioner "knew what it was all about", FHT at 114. The trial court was also painfully familiar with petitioner's lack of cooperation and responsiveness and may have considered it futile to make *Harrison* inquiries. This court finds that the trial judge's failure to give *Harrison* instructions was not plain error in these circumstances and that the waiver of counsel here was valid.

Upon concluding that petitioner was competent to waive his right to counsel and did validly waive his right, this court has now ruled upon all issues in this case. The petition for habeas corpus relief is denied in all respects. It is so ordered.