MARILAN SHIH-HSIEH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shih-Hsieh v. Commissioner
Docket No. 703-87.
United States Tax Court
T.C. Memo 1988-308; 1988 Tax Ct. Memo LEXIS 336; 55 T.C.M. (CCH) 1286; T.C.M. (RIA) 88308; July 21, 1988
Marilan Shih-Hsieh, pro se. Moira L. Sullivan, Mark L. Hulse, and Robert B. Marino, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Tax Year
Additions to Tax
Ended
Deficiency
Sec. 6653(a)
Sec. 6651(a)(1) [1]
1971
$ 131,473.00
$ 6,573.65
$ 32,868.25
1972
80,463.00
4,023.15
--
1975
6,603.00
330.00
--
The issues for determination are (1) whether assessment of taxes for any of the years is barred by the statute of limitations; (2) whether petitioner had unreported income in 1971 and 1972; (3) whether she is entitled to business deductions for 1975; and (4) whether petitioner is liable for the additions to tax determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time of the filing of her petition, *338 petitioner resided on Fifth Avenue in New York City. On March 14, 1973, petitioner submitted an unsigned Form 1040 for 1971 to the Internal Revenue Service in Manhattan. The form for 1971 reported no income and no tax due. On March 17, 1973, petitioner filed an individual income tax return on FORM 1040 FOR 1972. The return reported a net loss of $ 1,572 on Schedule C and a capital loss of $ 2,327 on Schedule D. The alleged business loss consisted of gross receipts of $ 19,500 less expenses of $ 21,072, of which $ 18,177 was shown as "Travel - Entertainment." On December 6, 1976, petitioner executed a Form 872 (Consent Fixing Period of Limitation Upon Assessment of Income Tax), extending the period for assessment for 1972 to June 30, 1978. On or about April 26, 1976, petitioner filed a return for 1975. She reported net business income of $ 397 from a business activity shown as "consultant." The total income reported was $ 25,699, which was reduced by alleged deductions of $ 25,302. The deductions included "Travel" of $ 18,621; "Meals . . . Lodging" of $ 2,009; and "Bus. Gifts" of $ 804. By a series of Forms 872 (Consent to Extend the Time to Assess Tax), petitioner extended *339 to December 31, 1986, the time to assess taxes for 1975. In or prior to 1973, the Internal Revenue Service commenced an investigation of petitioner's Federal income tax liabilities. The statutory notice for the years in issue was sent December 24, 1986, and determined that petitioner had unreported income based on unexplained deposits totaling $ 226,860 for 1971 and $ 134,212 for 1972. The notice gave petitioner credit for identified transfers and loans, interest expense, real estate taxes, and personal exemptions. The notice disallowed the capital loss claimed in 1972 and the business expenses claimed in 1975 for lack of substantiation. The deposits determined by respondent to constitute unreported income included, but were not limited to, deposits of the following checks: Date
Amount
Payor/Payee
2-26-71
$ 50,000.00
Estate of Rudy Bruner, Deceased, to
Charles H. Gross, endorsed to
Marilan Shih-Hsieh
7-12-71
65,000.00
Steel Electric Products Co., Inc., to
M. S. Hsieh Import & Export Co.
8-4-71
15,000.00
Charles H. Gross to Marilan Shih-Hsieh
11-29-71
50,000.00
(Same as above.)
1-12-72
55,000.00
(Same as above.)
2-4-72
35,000.00
Steel Electric Products Co., Inc., signed
by Philip Reddock, to M. S. Hsieh Import
& Export Co.
4-18-72
3,373.33
The Equitable Life Assurance Society of
the United States to Marilan Shih-Hsieh
6-5-72
2,500.00
Livingston Communications, Inc., signed
6-27-72
2,500.00
by Lida Elspeth Linvingston, to
7-10-72
2,500.00
Marilan Shih-Hsieh
*340 Charles Gross (Gross) had transferred to petitioner substantial funds over years prior to 1971 in addition to the amounts shown above. Petitioner and Gross treated the funds as "loans." Over the course of their relationship, petitioner had made some repayments to Gross of money received from him; substantial amounts, however, were never paid. During those years, checks given by petitioner to Gross and to certain other persons were returned by her bank, unpaid because of insufficient funds. In 1975 Gross sued petitioner for $ 105,000, but he never recovered the amount of the funds allegedly owed to him. Respondent's determination of unreported income also included "undeposited receipts" of $ 45,000 in 1971 and $ 28,000 in 1972. These undeposited receipts represented payments by petitioner to Las Vegas casinos. Petitioner gambled extensively at casinos during 1971 and 1972. In an application for a $ 1 million life insurance policy dated July 13, 1971, petitioner listed her occupation as "executive vice president." She represented the following: Net worth 1971 Real estate -- $ 3,445,000 Securities -- 1,750,000 Villa in Tangier, Morocco used as vacation res. House on *341 Castle Peak in Hong Kong, presently leased to a relative of the Governor of Hong Kong. Quest. 4-C -- Applicant's annual income from real estate & securities approx. $ 200,000 to $ 250,000. Owned real estate in Nevada, Canada. Presently negotiating real estate purchase [to] use as her permanent home in Palm Springs, Calif. 25 years in U.S. -- 9 years at present address. Citizen of Canada on permanent resident permit here. OPINION Procedural Matters
By notice served October 15, 1987, this case was set for trial in New York City on March 21, 1988. A Standing Pre-Trial Order served with the notice stated that "Continuances * * * will be granted only in exceptional circumstances. (See Rule 134, Tax Court Rules of Practice and Procedure.)" On January 30, 1988, petitioner sent to the Court a note, with attachments, which was filed as petitioner's Motion for Continuance and denied on February 2, 1988. A further motion for continuance made when the case was called for trial on March 21, 1988, was denied because of sufficient ground did not exist and it was unlikely that further evidence would be available if the case were continued. Petitioner was aware of her procedures *342 of the Court as a result of her experience in Shih-Hsieh v. Commissioner,T.C. Memo. 1986-525, affd. without published opinion 838 F.2d 1203 (2d Cir. 1987). Nonetheless, in the interest of fairness, the Court stated that petitioner might have an additional 90 days in which to submit any further evidence substantiating her expenses or explaining her deposits. As of the time of this opinion, no additional offer of proof has been received from petitioner. Statute of Limitations
During the trial, the Court and petitioner raised the issue of the statute of limitations. The Court's question related specifically to 1975. Respondent's counsel replied that waivers were attached to the return, and examination of the Forms 872 disclosed extensions for 1975 to December 31, 1986; thus the statutory notice was timely for that year. In response to petitioner's question, the Court ruled that the period for assessment for 1971 had not run because petitioner's Form 1040 was not signed. Kalb v. United States,505 F.2d 506, 508-509 (2d Cir. 1974). Nothing was said at trial about 1972, although petitioner's question covered all 3 years in issue. *343 Respondent knew or should have known that the matter had to be addressed. Thus the issue was tried by implied consent. Rule 41(b), Tax Court Rules of Practice and Procedure. Review of the exhibits discloses only an extension of the period for assessment for 1972 to June 30, 1978. In view of the evidence of unreported income, section 6501(e) would have permitted assessment within 6 years of the filing of the return. Respondent has given us no basis for sustaining a notice sent more than 13 years after the return was filed. The notice was untimely as to 1972, and assessment for that year is barred. Section 6501(a). Deficiencies
Petitioner testified at trial in response to questions from the court and from respondent's counsel. She testified that during 1971 she was preparing to go into the business of importing and exporting nuts, bolts, and steel products from the Peoples Republic of China. In order to fund the operation of the business, she contacted the persons including Philip Reddock of Steel Electric Products Co., Inc. She testified, somewhat inconsistently, that the funds deposited in the bank accounts that were the basis of respondent's determination were either *344 loans or deposits from casino activities. She also testified that various businesses reimbursed her for travel expenses and that one of them reimbursed her at the rate of $ 2,000 a month. Her testimony and her earlier representations on the insurance application established various sources of income consistent with respondent's determination. Gross also testified at trial. Neither he nor petitioner explained the circumstances of the specific transfers of funds to her in 1971 and 1972, totalling $ 170,000. At no time has petitioner presented evidence of the correct allocation of deposits between loans that were not income, business income, reimbursement of travel expenses, or gambling winnings. She has presented no evidence of gambling losses that might be deducted pursuant to section 165(d). The only evidence of expenses are certain American Express receipts. She has not provided the business purpose for any of the items shown on the receipts nor otherwise satisfied the substantiation requirements of section 274, and no deductions may be allowed on this evidence. These records do show, however, extensive expensive travel by petitioner. Under the circumstances of this case, *345 respondent was justified in using the bank deposits method to reconstruct petitioner's income. See, e.g., Estate of Mason v. Commissioner,64 T.C. 651, 656 (1975), affd. 566 F.2d (6th cir. 1977). Petitioner has the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rule 142(a), Tax Court Rules of Practice and Procedure.
It is not enough for petitioner to contend that some unspecified amount of the deposits constituted loans. The sparse evidence at trial suggests that petitioner had neither the ability nor the intent to repay all the money "borrowed." Under those circumstances, amounts initially regarded as loans may constitute taxable income. United States v. Rosenthal,470 F.2d 837, 841 (2d Cir. 1972). The facts of this case are comparable to those in O'Sheeran v. Commissioner,T.C. Memo. 1983-702, in which the taxpayer obtained funds from various persons, allegedly "loans" for a business venture. The taxpayer acquired significant assets and personal belongings and lived in an affluent *346 manner during the years in issue. He was unable to repay funds allegedly "borrowed," although a few repayments were made. We held that the alleged loans constituted income to the taxpayer and, with additional evidence of intent, sustained an addition to tax for fraud. Petitioner has certainly not persuaded us otherwise in this case. The deficiencies for 1971 and 1975 must be sustained. Additions to Tax
Petitioner has not proven that respondent's determinations for 1971 and 1975 are erroneous in any respect, and the evidence in this case supports respondent's determination of the additions to tax for negligence for 1971 and 1975. Respondent determined the addition to tax under section 6651(a)(1) with respect to 1971. The unsigned Form 1040 did not constitute a valid return. Kalb v. United States, supra.Petitioner claimed that the form was prepared by a professional preparer, who mailed it without her signature. She was, however, offered no explanation for the failure to file a 1971 return prior to March 1973, and she has shown no reasonable cause that would avoid the addition to tax under section 6651(a)(1). Decision will be entered for the respondent *347 for 1971 and 1975 and for the petitioner for 1972.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue.↩